## STATE v. DUGAN NORLANDER.

152 N. W. (2d) 774.

August 25, 1967—No. 40,542.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* for appellant.

*Douglas M. Head,* Attorney General, *John C. Arko,* County Attorney, and *David Naughtin,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment of conviction.

On September 2, 1965, an information was filed in the District Court of St. Louis County charging defendant with aggravated assault, contrary to Minn. St. 609.225, subd. 2.[1] Defendant's first trial resulted in a jury verdict of guilty, but a new trial was granted. At the second trial another jury verdict of guilty was returned, and judgment was entered pursuant thereto on April 21, 1966. Defendant appeals, urging (1) that the verdict is not supported by the evidence, and (2) that the trial court erred in refusing to submit to the jury the offense of simple assault.[2]

---

[1] Minn. St. 609.225, subd. 2, provides: "Whoever assaults another with a dangerous weapon but without intent to inflict great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

[2] Minn. St. 609.22 provides: "Whoever does any of the following commits

■ Defendant claims that the evidence required the jury to find he was acting in self-defense. We do not agree. There was evidence showing: Just before the fracas giving rise to the criminal charges, defendant, about 24 years old, and a friend were apparently trying to develop an acquaintance with two girls seated with another boy in a car near an exit gate at the St. Louis County Fairgrounds. It was about 1:30 a. m. on July 31, 1965. Defendant had been drinking. One Robert McCarthy, a director of the fair and so identified by a badge, shouted to defendant and his companion from a distance of about 70 feet that the fair was over and that it was time to go home. Shortly afterward McCarthy, observing the pair again, walked toward them.

An altercation ensued. Defendant slashed McCarthy with a knife several times. McCarthy fell and defendant kicked him. At one point defendant said, "Hey, fat man, I am going to slit your belly." At the time McCarthy fell, two watchmen came on the scene. Defendant and his friend fled when the watchmen tried to stop the fight. Later they left the fairgrounds by climbing over a fence topped with barbed wire.

McCarthy suffered a broken nose, a cut in the abdominal area, a 2-inch-long laceration in his chest which severed a major muscle, and a wound 6 inches long and 4 inches deep under his left arm. After the incident, he was lifted from the ground by a night watchman and placed in his car. Mrs. McCarthy drove him to the hospital, where he remained for over a week.

McCarthy's knife was found shortly after the incident. It was open only about 45 degrees. There was no blood on the blade.

Defendant claimed that before the fight McCarthy came up to him and grabbed his arm roughly, asserting that he had told defendant to leave; that defendant then said he was leaving and pulled loose; and that McCarthy kicked him in the side, sending him to his knees. Only then,

an assault and may be sentenced to imprisonment for not more than 90 days or to payment of a fine of not more than $100:

"(1) Does an act with intent to cause fear in another of immediate bodily harm or death; or

"(2) Intentionally inflicts or attempts to inflict bodily harm upon another."

according to defendant, did he pull his knife and tell McCarthy to get back because he had an equalizer; whereupon McCarthy said, "You want to play with knives. I have got one of those too." Defendant testified that McCarthy cut his wrist and knuckle; he admitted kicking McCarthy while the latter was on the ground.

Defendant contends that the evidence required a finding of self-defense for the following reasons: (a) McCarthy's version of the incident is not believable; (b) the only eyewitness to the fight, other than defendant and McCarthy, confirmed defendant's version and refuted McCarthy's; and (c) the other evidence confirmed defendant's version and refuted McCarthy's. These points will be considered in turn.

In claiming that McCarthy's version of the incident is not believable, defendant refers to testimony that defendant's attack upon McCarthy was unprovoked and that the latter was unable to open his pocketknife to defend himself. Defendant claims that it is incredible that he would assail a complete stranger in the absence of provocation. But the jury could have found that defendant was affected by the consumption of seven or eight bottles of beer and that just before the fight he displayed a belligerent attitude by threatening to slash the tires of a car. And the jury could have found that defendant did hear McCarthy's shouted request that he and his friend leave the fairgrounds, despite their testimony they did not hear it.[3] In addition, although McCarthy could not recall whether or not he exchanged words with defendant before defendant drew his knife, other witnesses testified to hearing words which might have unduly aggravated defendant.

Defendant brands as unbelievable McCarthy's claim that he was unable to open and use his knife. But the jury could have found that, despite the fact this was a common pocketknife which opened easily, McCarthy was unable to open it because of the relentlessness of defendant's attack.

Defendant claims that the boy sitting in the car witnessed the com-

---

[3] McCarthy's wife corroborated McCarthy's statement that he had shouted the request. The occupants of the car did not recall hearing it, but the jury could have found it would be more difficult to hear from inside the car.

mencement of the fracas, and that his testimony confirms defendant's version. The jury was not compelled to find this was the case. The witness testified he was conversing with defendant's friend, who was standing on the side of the car opposite the point where the incident occurred, when he heard some loud talking on the other side. At first he paid no particular attention. Then, moments later, he saw that defendant and McCarthy both had knives. He was unable to say whether McCarthy's knife was completely open. He observed McCarthy kick at defendant.

The jury could have found from this testimony that the witness had not observed or did not recall the start of the fracas. His testimony that he saw McCarthy kick at defendant after this bears out McCarthy's version, that he intended to knock a knife from defendant's hand.

Defendant relies heavily upon some witnesses' accounts of what McCarthy's wife had shouted in the direction of the fracas. Mrs. McCarthy's statement, evidently made soon after the trouble started, was variously reported by the witnesses. Defendant said it was, "Bob, have you gone out of your head? Leave him alone. Leave him up." Defendant's companion recalled, "Bob, leave him alone. Get up. Leave him alone. Leave that boy alone." While one of the girls in the car could not hear what the statement was, the other said it was, "Bob, have you gone crazy? Let that boy up." The boy in the car reported it as, "Bob, are you out of your head?" One of the night watchmen remembered it as, "Bobby, Bobby, don't." Mrs. McCarthy testified that she had called defendant—not her husband—crazy, and yelled to her husband to get away from defendant. Whatever Mrs. McCarthy said or intended to say, it was she who called for the police.

Defendant's claim that the evidence compelled the jury to find McCarthy was intoxicated is clearly without merit. A number of witnesses, including one with years of experience as a police officer, testified they observed no indications McCarthy was intoxicated, although there was testimony to the contrary.

Only defendant and his companion testified that McCarthy's knife was completely open or that he wounded defendant with it. The knife was found opened only 45 degrees, with no blood on the blade. The

jury could well have found defendant's minor injuries to his wrist and knuckles were from climbing over the barbed-wire-topped fence after the incident.

There was testimony that McCarthy, as well as defendant, made swinging or slashing motions during the incident, rather than punching motions as in a fist fight. But the jury could have found this explained by defendant's own testimony that McCarthy used Karate-like movements.

Even if the jury had concluded McCarthy started the fracas, the fact that defendant inflicted as severe injuries as he did, particularly when McCarthy was falling or after he fell, would have justified the jury in finding as it did. Although it is true, as defendant asserts, that the mere fact that one is a victorious combatant does not necessarily preclude his having acted in self-defense, the jury could reasonably have found here that the force employed by defendant was not reasonable in amount or that it was not confined to the purpose of resisting an offense against defendant's person, within the meaning of Minn. St. 609.06,[4] as to which the jury was properly instructed.

Two juries have now found defendant guilty of the offense charged, and we find no justification for overturning the verdict.

■ Defendant's contention that the trial court was bound to submit the offense of simple assault is without merit. Under the evidence, there was no question as to defendant's intentional infliction of injuries with a knife. Thus, there was no evidence to justify a jury finding him guilty of simple assault. Defendant was clearly either guilty of the crime charged, or, under his claim of self-defense, not guilty of any assault. See, State v. Tennyson, 212 Minn. 158, 2 N. W. (2d) 833, 139 A. L. R. 987, and cases cited; State v. Coon, 170 Minn. 343, 212 N. W. 588, and cases cited. State v. Brinkman, 145 Minn. 18, 175 N. W. 1006, and

---

[4] Minn. St. 609.06 provides in part: "Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist:

\* \* \* \* \*

"(3) When used by any person in resisting \* \* \* an offense against the person."

State v. Gaularpp, 144 Minn. 86, 174 N. W. 445, cited by defendant, are distinguishable in that in each of those cases there was evidence to justify the jury in finding defendant guilty of the lesser offense.

Affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.